Chief Judge Kaye
(concurring). I agree with the majority that, in light of the comma between the words "liable” and "who materially aids,” a literal reading of General Business Law § 691 (3) compels the conclusion that a "controlling person” such as a partner, officer or director of a business that has violated the Franchise Sales Act is jointly and severally liable only if that person "materially aid[ed]” in the violation itself (see, majority opn at 581).
I write separately, however, to express my concern that section 691 (3), as now interpreted, imposes secondary liability on such a narrow class of individuals as to be virtually meaningless in practical application, thereby stripping the statute’s private enforcement mechanism of any real impact. As we now read the statute, in order for an officer or director to be secondarily liable in a private lawsuit brought by a purchaser of a franchise, that person must have (a) directly or indirectly controlled a person liable under the statute (General Business Law § 691 [3]); (b) not have made any untrue statement of a material fact or have engaged in any device, scheme, course of business or artifice to defraud in the course of offering or selling the franchise (General Business Law § 681 [13]; §§ 687, 691 [1]); (c) yet materially aided in the act or transaction constituting the violation (General Business Law § 691 [3]) and (d) either have known or not have been negligent in not knowing that the violation took place (id.). It is hard to construct such a situation.
Unlike a lower-level employee who materially aided in a violation of the Act by providing false financial information without knowing its import, the likelihood that a high-level executive such as a director — charged with the duty of good faith and reasonable care with respect to the corporation’s affairs (see, Business Corporation Law § 717) — unwittingly, yet materially, aided in a violation of the Act is slim. Few if any executives of a corporation that has violated the Franchise Sales Act, therefore, will be secondarily liable under section 691 (3): *586 they will either be primarily liable under section 687 or they will not be liable at all.
I suspect this is not what the Legislature intended. First, it seems unlikely that section 691 (3) would have been enacted to serve virtually no purpose. Second, New York’s Franchise Sales Act, like other State franchise acts, was adopted in 1980 (L 1980, ch 730) to remedy the perceived gap resulting from the largely unsuccessful efforts to regulate franchise sales — which had experienced rapid growth in the American economy after World War II — under the Federal securities laws (see, e.g., Hearing on 1980 NY Senate Bill S 5320, Apr. 15, 1980, at 14-15; Rollinson, Franchise Attorney Responsibility to Franchise Purchasers, 2 J of [ABA] Forum Comm on Franchising 20, 21 [1982]; Emerson, Franchise Contract Clauses & the Franchisor’s Duty of Care Toward its Franchisees, 72 NC L Rev 905, 926, n 81). California was the first State to pass such an act in 1971 (Cal Corp Code § 31000 et seq.) and the California courts have frequently noted the strong affinities between California’s Franchise Investment Law and the Federal securities laws (see, e.g., Keating v Superior Ct. [Southland Corp.], 31 Cal 3d 584, 645 P2d 1192, 1199, revd on other grounds sub nom. Southland Corp. v Keating, 465 US 1; Courtney v Waring, 191 Cal App 3d 1434, 1438, 237 Cal Rptr 233; Eastwood v Froehlich, 60 Cal App 3d 523, 529, 131 Cal Rptr 577).
The language in section 691 (3) in particular — nearly identical to that of the analogous California provision except for the comma (Cal Corp Code § 31302)* — closely parallels the 1934 Securities Act (compare, General Business Law § 691 [3] ["A person who directly or indirectly controls a person liable under *587 this article * * * is also liable jointly and severally with and to the same extent as the controlled person”], with 15 USC § 78t [a] ["Every person who, directly or indirectly, controls any person liable under * * * this title * * * shall also be liable jointly and severally with and to the same extent as such controlled person”]). Section 691(3) and the 1933 Securities Act even include nearly identical good faith/lack of knowledge defenses {compare, General Business Law § 691 [3] ["It shall be a defense to any action * * * that the defendant did not know or could not have known by the exercise of due diligence the facts upon which the action is predicated”], with 15 USC § 77o [controlling person liable "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist”]).
In marked contrast to section 691 (3), however, the Federal securities laws impose secondary liability on any officer or director (as opposed to merely an employee) exercising control over the primary wrongdoer who knows about the violation or who negligently fails to supervise the wrongdoer and thus stands behind the scenes and allows the violation to take place — regardless of whether the controlling person "materially aided” in the violation (see, e.g., Marbury Mgt. v Kohn, 629 F2d 705, 715; Savino v Hutton & Co., 507 F Supp 1225, 1241-1243). Contrary to the assertions of the majority, the New York Franchise Act does not expand upon or materially differ from the governing Federal securities law standard by imposing liability on affiliated persons "irrespective of whether they were in a position to directly control the violator.” (Majority opn at 584.) The language and structure of the statute in fact make clear that only partners, officers and directors who control violators of the Act or who "occupy! ] a similar status or perform! ] similar functions” are liable under section 691 (3) as controlling persons.
From the perspective of a plaintiff like the one here attempting to defeat a motion to dismiss at the pleading stage, there is obviously an enormous difference between requiring the allegation that an officer or director controlled another person, who has violated the Act, and requiring the additional allegation that the controlling person also materially assisted in the violation itself. It thus appears that the section’s now-fateful comma may have substantially diminished the Franchise Act’s over-all effectiveness in combating "the sale of franchises *588 where such sale would lead to fraud” (General Business Law § 680 [2]).
Judges Simons, Bellacosa, Smith and Ciparick concur with Judge Levine; Chief Judge Kaye concurs in result in a separate opinion in which Judge Titone concurs.
Order modified, etc.

 California Corporations Code § 31302, entitled "Liability for acts of agents” provides as follows: "Every person who directly or indirectly controls a person liable * * * every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.”
One commentator, noting that this provision is to date "the only [State] franchise statute giving rise to extensive litigation of joint and several liability,” recognizes that it imposes secondary liability on officers and directors "who have no actual knowledge of the facts giving rise to a violation, but who on reasonable investigation could have learned those facts” (Dunham, Liability of Shareholders, Officers, Directors and Employees for Franchise Law Violations, 13 Franchise LJ 101, 122, 123 [1994]).